IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 16, 2014

## STATE OF TENNESSEE v. LAWRENCE PIERCE

**Appeal from the Criminal Court for Bradley County**
**Nos. 12-CR-322, 12-CR-310     Carroll L. Ross, Judge**

**No. E2014-00262-CCA-R3-CD - Filed October 14, 2014**

The Defendant, Lawrence Pierce, appeals the Bradley County Criminal Court's order revoking his probation for his convictions for violating the sex offender registry law and flagrant nonsupport and ordering his effective eight-year sentence into execution. The Defendant contends that the trial court abused its discretion by revoking his probation on the sole ground that he failed to pay restitution. We reverse the judgment of the trial court and remand the case for the trial court to make additional findings of fact and conclusions of law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Charles Richard Hughes, Jr., District Public Defender, for the appellant, Lawrence Pierce.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Stephen Crump, District Attorney General; and Stephen Hatchett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 12, 2013, the Defendant pleaded guilty to violating the sex offender registry law and to two counts of flagrant nonsupport and was sentenced to an effective eight years to be served on probation. On September 17, 2013, a probation violation affidavit alleging that the Defendant violated the conditions of his release by failing to pay supervision fees, court costs, and restitution was issued. On September 19, 2013, the Defendant was arrested for violating his probation.

At the revocation hearing, Charles Matthews testified that he was the Defendant's probation officer, that the Defendant was required to pay restitution in the amount of $500 per month, and that they discussed the restitution and reviewed the judgment. He said the court costs and restitution totaled $98,934.94. The restitution resulted from the Defendant's failing to pay child support. The order of restitution was reflected on the judgment, which was signed by the Defendant.

Mr. Matthews testified that he was the Defendant's probation officer beginning in 2007 for an unrelated flagrant nonsupport case. In 2010, the Defendant violated the conditions of his probation in that case by failing to report to Mr. Matthews and by failing to pay court costs.

On cross-examination, Mr. Matthews testified that he met with the Defendant on August 14, 2013, and that the Defendant complied with the sex offender registry requirements at their meeting. The Defendant was placed on maximum supervision, which required him to wear a monitoring device and to report to Mr. Matthews twice monthly. The Defendant complied with the reporting requirements in August and September. Mr. Matthews agreed that the Defendant was arrested and served with the probation violation warrant at the probation office.

Mr. Matthews testified that the Defendant had served one year in confinement in another state before being released on probation in the present cases and that the Defendant was diagnosed with a back injury. They discussed the Defendant's need for surgery to correct the injury. Although Mr. Matthews did not speak with the Defendant's work supervisor, the Defendant told Mr. Matthews that he lived at a motel and began working there on September 3, 2013. The Defendant told Mr. Matthews that his work supervisor was going to pay him $160 per week and was allowing him to live at the motel.

Mr. Matthews testified that he spoke to the prosecutor, who instructed him to file a probation violation report if the Defendant did not submit a $500 restitution payment by September 12, 2013, because the judgment required a payment every thirty days. The Defendant was arrested after he failed to make a payment.

The Defendant testified that he met with Mr. Matthews the day after his release and that he was told he was required to pay $500 monthly toward restitution. He looked for employment at the career center and applied for jobs online but could not find a job. He found a job working at the motel three weeks after his release. He showed the trial court a receipt for $140.

The Defendant had been in confinement for one year and two months before his release on probation in the present cases. He was extradited to Tennessee from Connecticut and had no clothing, money, or place to live at the time of his release. He said he had previous convictions for kidnapping and sexual battery and had served fifteen years in confinement before being ordered to pay $500 per month restitution in the present cases. He said that when he was released in 2010, he worked for Parris Roofing, who garnished his wages for child support payments. He said he gave "this woman" her money before the garnishment became effective. He said he bought the children car seats and "bought everything you could imagine for the[] babies," although he was not certain they were his children. He said he did everything he could to find work when he was released on probation. He claimed it was false that Mr. Matthews had to file a probation violation report, although "these people" said Mr. Matthews was required to do so.

The Defendant agreed that he was previously convicted of flagrant nonsupport and that the garnishment in that case totaled one-half of his paycheck in addition to the cost of writing the check. Regarding the Defendant's previous case, he said the State took his federal income tax return, which was about $600. He said that although his probation was revoked in the previous case for failure to report, he was in jail and unable to report. He said that when he was released, he went to the "child support people" for assistance in making payments. He also went to "the courtroom" where he was told to wait, and he was arrested while waiting. He said he was released the following Monday when the trial court learned the arrest was a mistake. He said he served the remainder of his sentence on probation.

The Defendant testified that he received his first paycheck on September 12, 2013. He was shown a document, and he agreed he was hired on September 3 and was paid $160 on September 13. After he received his first check, he met with Mr. Matthews, who asked if he had $500. The Defendant told him it would be two more weeks before he had all of the money. He said Mr. Matthews told him to wait and returned with two police officers, who arrested him. He said he was prepared to pay $140 that day.

The Defendant testified that he requested but was denied a medical furlough when he was in jail before the trial court granted probation in the present cases. He was treated four times by the jail physician. The Defendant fell when he worked for Parris Roofing. He denied receiving unemployment or welfare payments and said he worked hard to pay child support.

The Defendant testified that he met with Mr. Matthews as required, complied with his 10:00 p.m. curfew, and wore an ankle bracelet. He said that after he was released, he had to obtain a Social Security card in order to obtain state-issued identification for employment purposes, which "cost[] money." He said Mr. Matthews gave him $10 for the costs. He quit

smoking and denied drinking alcohol or using drugs. He said that he could comply with the $500 monthly because he had a job. He said his work supervisor was holding his job until the probation violation warrant was resolved. At the time of the revocation hearing, he had been in confinement 111 days.

A document related to the child support arrearage was received as an exhibit and showed that although the Defendant's wages were garnished, the amount paid did not comply with the court order. The trial court noted that the Defendant made "precious few payments."

On cross-examination, the Defendant testified that the victim of his kidnapping and sexual battery convictions was a friend of his former wife. The relevant presentence report was received as an exhibit. He agreed that he had six previous felony convictions and misdemeanor convictions for theft of property and breach of the peace. He agreed that he knew he was under a court order to pay child support arrearage when he left Tennessee and went to Connecticut to care for a dying uncle. He registered as a sex offender while in Connecticut. He agreed that he was convicted in federal court of "interstate threatening communications" and served four years in confinement because he told his former wife that he would "rip her head off" if she sold any more of his belongings. He said she sold his truck, boat, tools, jewelry, and coins when he was paying child support. Although he said he "never went to prison" until he met his former wife, he admitted to being convicted of felonious theft and receiving probation before he met her. He agreed that he was convicted in Alabama of misdemeanor assault of a "lady friend" and that he was convicted in Georgia of giving a false name to a police officer, driving under the influence, and making terroristic threats.

The Defendant testified that he knew he was required to pay $500 monthly as a condition of his probation but that he thought he "could get out and go right to work" when he agreed to the payments. He agreed he understood the conditions of his release when he pleaded guilty. He denied knowing if one of his children had special needs and said he had not seen the children since they were babies.

On redirect examination, the Defendant testified that he told counsel before entering the plea that he was worried about making the $500 monthly payments and that counsel told him the district attorney would not agree to a lower amount. He agreed counsel told him that counsel talked to the prosecutor about allowing more than thirty days to make the first payment because the Defendant had no personal property or money. He told the trial court that he only needed time to get on his feet before making the first payment and that he had a job and could pay the child support.

The trial court found that the Defendant had violated the conditions of his probation by failing to pay probation fees, court costs, and restitution and ordered him to serve the remainder of his sentence in confinement. The court found the Defendant's testimony about his previous convictions to be deceptive. The court found that the Defendant had an extensive criminal record over a long period of time, noting specifically his kidnapping and sexual battery convictions. The court noted that the Defendant blamed someone else for his previous convictions and refused to take responsibility for his conduct. The court found that although the Defendant claimed he never went to prison before meeting his former wife, the Defendant had a history of convictions before meeting her, which included a history of violence.

The trial court found that the Defendant was not amenable to the probation process. The court found that the Defendant had never paid child support consistently and at times, went years without making a payment. The Defendant interrupted the trial court several times, claiming he was "fighting for [his] life." The court stated that the Defendant had received opportunities to pay child support and found that the Defendant continued to "get[] in trouble." The court noted the Defendant's convictions while in Connecticut. The court found that the Defendant was no longer amenable to probation based on his extensive criminal history and ordered him to serve the remainder of his sentence in confinement.

Upon the trial court's ruling, the Defendant stated, "I'll see you in court, Your Honor." The court noted for the record that the Defendant looked at him in a "very threatening tone." The court found the Defendant in contempt of court. The Defendant interrupted the court, and the court found the Defendant in contempt for this interruption. The Defendant said, "I'm through with you," and the court found the Defendant in contempt for a third time. The Defendant said, "This Court needs in contempt," and the court again found the Defendant in contempt for his statement. The court ordered the Defendant to serve ten days for each contempt, and the Defendant told the court to make it 100 days. The court found the Defendant in contempt for a fifth time and ordered the five counts to be served consecutively to each other and to the remainder of his eight-year sentence. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his probation. He argues the court failed to make specific findings regarding his ability to pay restitution, court costs, and probation fees and failed to find that alternatives to confinement were inadequate to satisfy the State's interest in punishing the Defendant, deterring others from similar conduct, and ensuring the payment of restitution.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

The record shows that as a condition of the Defendant's probation, he agreed to and was required to pay $500 in restitution every thirty days in addition to court costs and probation fees. Although the Defendant testified that it took time to find employment, he knew of the $500 monthly restitution payment and accepted the State's plea offer to avoid having a trial that would have exposed him to an extensive sentence in confinement. The Defendant violated the terms of his release by failing to comply with his financial responsibilities.

We note, however, that the trial court failed to state on the record whether the Defendant willfully failed to make the restitution payment or whether he unsuccessfully attempted without fault to make the payment. Our supreme court has concluded that when the revocation of probation is based solely upon a defendant's inability to pay a fine or restitution, a trial court must "articulate a finding that [a] defendant ha[s] neglected or willfully refused to pay[.]" *State v. Dye*, 715 S.W.2d 36, 41 (Tenn. 1986); *see Bearden v. Georgia*, 461 U.S. 660, 674 (1983). Likewise, a trial court is required to determine if "alternatives to imprisonment [are] inadequate to meet the State's interests in punishing [a defendant], deterring others from similar conduct, and ensuring the payment of restitution to victims of crime." *Dye*, 715 S.W.2d at 41 (citing *Bearden*, 461 U.S. at 674). In the absence of such factual findings, "fundamental fairness requires that [a defendant] remain on probation." *Bearden*, 461 U.S. at 674.

Although the record in this case does not include a transcript of the guilty plea hearing, we note that at the time of a guilty plea, the trial court and the prosecutor "have a

responsibility to assess the reasonableness of a defendant's offer to make restitution if it is a basis for the suspension of a sentence." *Dye*, 715 S.W.2d at 41. Without such a determination at the time of the offer to pay restitution, "it is inappropriate" for the court to later incarcerate a defendant, regardless of fault, solely for the failure to pay. *Id.*; *see* T.C.A. § 40-35-304(d) (2014) (stating that when a trial court determines "the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform").

The trial court found that the Defendant's testimony regarding his previous criminal convictions to be deceptive and misleading, and it noted his history of refusing to accept responsibly for his conduct and blaming someone else for his previous convictions. Likewise, the court discredited the Defendant's testimony and his promise to pay restitution if he were returned to probation. We note the court found that the Defendant was not amenable to the probation process, that the Defendant had never paid child support consistently, and that the Defendant had received multiple opportunities to pay child support but continued to "get[] in trouble." Although the court's findings are supported by the record, the court failed to make the appropriate findings pursuant to *Dye* and *Bearden* regarding the Defendant's failure to comply with the $500 monthly payment. As a result, we remand the case to the trial court for an evidentiary hearing during which the court should make findings relative to the reasons behind the Defendant's failure to make the restitution payment and whether alternative measures to incarceration were in adequate to meet the State's interests.

Based on the foregoing and the record as a whole, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

_____
ROBERT H. MONTGOMERY, JR., JUDGE